For the reasons stated, plaintiff's claim is overruled. Judgment will be rendered for defendant.

(C. D. 1841)

E. Sasajima et al. *v*. United States

United States Customs Court, Third Division

(Decided January 23, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* and *Dan Erik Hedin* of counsel) for the petitioners.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Daniel I. Auster*, trial attorneys), for the respondent.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: These three petitions for remission of additional duties, filed under authority of section 489 of the Tariff Act of 1930, as in effect at the time of filing, have been consolidated for trial. They involve importations of cotton cloth, woven rayon fabrics, and other merchandise imported from Japan and entered at the port of Los Angeles during the years 1951 and 1952.

Details in regard to these petitions, as shown by the official papers, are as follows:

| Petition No. | Entry No. | Date of entry | Name of entrant | For account of |
|---|---|---|---|---|
| 7186–R | 998 | 7/24/51 | Universal Foreign Service Co. | E. Sasajima |
| 7187–R | 7661 | 12/13/51 | " | U. Okubo |
| " | 8793 | 1/9/52 | " | " |
| 7188–R | 11864 | 3/21/52 | Kyoto Silk Co. by C. S. Sellers Atty. in fact | Kyoto Silk Co. |
| " | 3130 | 9/11/51 | Universal Foreign Service Co. | " |
| " | 3310 | 9/13/51 | " | " |
| " | 5149 | 10/24/51 | " | " |
| " | 5727 | 11/2/51 | " | " |

On the back of the entries in the name of Universal Foreign Service Co. are declarations giving the name of the person for whose account the entry was made as the actual owner of the merchandise for customs purposes. It does not appear whether owner's declarations were filed, which, under section 485 (d) of the tariff act, would relieve the nominal consignee of liability for additional duties.

The record indicates that U. Okubo was the owner of Kyoto Silk Co. and that the entry for the account of E. Sasajima was made for Mr. Okubo as an accommodation.

The merchandise was appraised at values higher than the entered values. Appeals for reappraisement were taken but were abandoned and dismissed by the court on December 1, 1954.

In support of the petitions, Clarence George Sellers, owner of Universal Foreign Service Co., and Paul Yshijima, an employee of that company, appeared and testified. At the time of the trial, U. Okubo was no longer living.

Mr. Sellers' testimony may be summarized as follows: He has been a customs broker since 1933 and had known Mr. Okubo since that time. The latter had been importing merchandise before the war and the witness had handled all of his customs clearance. The merchandise which Okubo imported consisted of kimonos, obis, and piece goods, which were sold to the Japanese trade. Okubo made frequent buying trips to Japan and apparently was there during the war. He returned to this country in 1950 to reengage in business.

Sellers did not prepare the entries herein himself but thought that, with the exception of one or two, they were prepared by one of his employees. He admitted that, prior to filing them, he did not confer with the appraiser as to the value of the merchandise and did not present submission sheets, that is, requests to the appraiser to furnish values for the merchandise. Such submission sheets were actually prepared, but were not filed. The witness' explanation was that the involved merchandise is sold only to the Japanese trade; that it was his impression that Okubo was the only one importing it, and, for that reason, he believed that the examiner could not give any values because he had no merchandise for comparison. He testified that, prior to the first importation, he asked Okubo about his values, whether he had received any special price, and whether the invoices were true and correct. According to the witness, Okubo told him, through an interpreter, that the invoices were correct.

Sellers stated that the first knowledge he had that a question was being raised as to the value of this merchandise was obtained from LeRoy Powers, special agent, United States Customs Service, in February 1952, when he was requested to accompany the agent to Okubo's store. They went to the store but Okubo was in Japan, and the person in charge did not know about any of the business transactions. Powers looked through the filing cabinet and the boxes and suitcases in the store but could not find anything regarding private invoices or bookkeeping. The man who took charge of Okubo's internal revenue tax was questioned, but he did not have the books either. At the suggestion of the special agent, the witness wrote Okubo advising him to return to Los Angeles and bring with him all the papers pertaining to past shipments. Sellers testified that he wrote in the English language and also had a letter written in Japanese to the same effect. The person who made the transposition of the

English letter into the Japanese language was produced as a witness and, after questioning by both counsel and the court as to the meaning of various terms used in the letter, copies of both letters were received in evidence as petitioners' exhibits 1 and 2, respectively. We quote petitioners' exhibit 1 as follows:

Dear Mr. Okubo:

The United States Customs are checking your prices on all the merchandise you have imported since the ending of the war. They have *demanded* that we furnish them with your invoices which you received that are written in Japanese. They also want your record book which you keep in Japanese showing what you paid for the merchandise and on which you base your costs.

Advise us by return Air Mail where you have stored these papers and give us a letter of authority to whoever has them, instructing him to give us all your records. This is very serious and we must do this for the Customs at once. The Customs know that you have invoices written in Japanese and will not take any excuses.

It is advisable that you cut your stay in Japan as short as possible and return to Los Angeles to adjust this matter with the United States Customs. [Italics quoted.]

Sellers testified that these letters were prepared on February 8, 1952, and sent out at that time, which was a few days after the special agent and Sellers had tried unsuccessfully to locate Okubo's private invoices. He further stated that Okubo did not furnish any bills or invoices by mail in response to the letter. When Okubo returned to Los Angeles in June 1952, he did not produce any type of document, except commercial invoices showing prices corresponding to those in the consular invoices. At that time, a meeting was held at which Sellers, Okubo, an interpreter, and the special agent were present. Thereafter, Okubo wrote to Japan and obtained other invoices, in English, which were submitted to the special agent, but the agent considered them as having been made up specially for these importations.

Paul Yshijima, an employee of the Universal Foreign Service Co. in 1952, testified that he was born in this country of Japanese parents and understood the Japanese language and could also write it. He stated that he was told by Sellers of this case and was asked to cooperate with the special agent and to act as interpreter for both Okubo and the special agent, which he did. He acted as interpreter more than once, and, at one session, the special agent wanted Okubo to produce certain documents or personal invoices in Japanese, which the special agent insisted were present. Okubo, at many of these sessions, denied that he had such documents, but, after numerous meetings, he stated that he had a code which was made up of a simple Japanese proverb. He explained the code to the witness and the witness turned it over to the special agent. The witness applied this code to various documents and, as a result, considered that they were "getting at some true value of the merchandise." He transmitted most of

his findings to the special agent directly. On cross-examination, the witness stated that the meeting at which Okubo gave him the code occurred about 1½ or 2 months after the first such meeting. When asked whether Okubo gave the code voluntarily, he stated that it was only after considerable questioning as to the meaning of various writings in Japanese that Okubo stated that one of them was a code. The witness then applied the code, in an effort to determine whether there were values other than the entered or invoiced values, and found that the values indicated by the use of the code were higher. That information was transmitted to the special agent.

Sellers, upon being recalled, stated that the merchandise involved in the instant case was not appraised at the values developed by the use of the code; that the use of said code increased the values very little over the prices given in the invoices—between 10 and 20 per centum, whereas the appraised values were increased from 10 to 75 per centum over the entered values.

The issue in this case is whether or not petitioners have met the burden of proving affirmatively that the entries were made without intent to defraud the revenue, or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise. *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41; *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507. In remission cases, petitioner must show that he was acting in entire good faith; that no facts or circumstances were known to him which would cause a prudent or reasonable person to question the correctness of the values given by him; and that a full disclosure was made to customs officials of all material facts within his knowledge or possession. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Intra-Mar Transport Corp., Formerly Gondrand Transport Corp.* v. *United States*, 42 C. C. P. A. (Customs) 94, C. A. D. 578. Furthermore, petitioner is under a duty to inform himself as to the correctness of his representations as to value. *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70.

It is claimed on behalf of Universal Foreign Service Co. that the record shows that said petitioner did not have any knowledge of values, other than those on the invoices, and had no reason to believe that they were erroneous; that the issue is whether said petitioner-broker exercised good faith; and that the attitude of the importer is not relevant.

There are cases holding that, where entry was made in the name of the broker and no owner's declaration was filed, the broker, as nominal consignee, was the principal for tariff purposes and that the attitude of the importer was of no concern for the reason that it was not one of the petitioners. *National Carloading Corp. et al.* v. *United States*, 16 Cust. Ct. 138, C. D. 1001; *Norman G. Jensen* v. *United States*, 22 Cust. Ct. 241, Abstract 52876. However, in the instant case, whether

or not owners' declarations were filed, the petitions are in the names of the ultimate consignees as well as in the name of the broker. The attitude of the former is, therefore, relevant to the issue, which is whether or not petitioners acted in good faith in undervaluing the merchandise.

Even considering the broker alone, it is to be noted that all that he actually did to ascertain the correct values of the merchandise was to ask the importer whether the invoice values of the first entry were correct. No submission sheet was filed, for the reason that the broker was of the opinion that the appraiser could not have any information, nor was any other inquiry made as to the value of the merchandise. Although the broker knew by February 1952 that the entered values were being questioned by customs officials, nevertheless, the last entry, No. 11864, was made on March 21, 1952, at the invoice values. This entry was appraised on July 29, 1952, but none of the other entries was appraised until October 9, 1952. That was subsequent to the discovery of the code revealing higher values, but there is no evidence that any attempt to amend the entries was made.

According to the record, U. Okubo is the actual importer of all the merchandise involved herein, since he was the owner of Kyoto Silk Co., and since the entry in the name of E. Sasajima was made as an accommodation for him. It is evident from the testimony that he had knowledge of other values than the entered values; that a record of such values was kept by means of a code; and that he did not reveal this information until after repeated questioning by the special agent.

In *United States* v. *Pacific Customs Brokerage Company*, 41 C. C. P. A. (Customs) 4, C. A. D. 521, entry was made by a company of customs brokers as nominal consignee, and the petition was filed by said firm. It appeared that the shipper had informed the broker that he was exporting 4 chinchillas valued at $350 each, 2 at $300 each, and 3 at $100 each, but that he actually received the sum of $2,500 in American money, plus $400 in Canadian money. Under the circumstances in that case, our court of appeals held that petitioner had not established its good faith by satisfactory evidence. The court said (p. 8):

There can be no question but that the principal had a personal knowledge of the true purchase price as also had the ultimate consignee, Mr. Desjardin. It would seem to us to be a reckless disregard for truth when the shipper and exporter gave to the broker a false valuation. Ignorance of the law, of course, is not to be considered. It seems to us to have been the duty of the broker to have consulted with the ultimate consignee. If he had done so and the consignee told the truth he would have been in possession of the true value.

\*      \*      \*      \*      \*      \*      \*

We find nothing in the entire record which could absolve the entry of the goods at wrong values when the correct prices were known by the principal for whom the broker acted. It is clear to us that appellee has failed to meet his statutory burden of proof \* \* \*.

Here, the broker consulted the ultimate consignee but did not make any other inquiries as to the value of the merchandise. The ultimate consignee, who is one of the petitioners, did not tell the truth. In other words, the principal, for whom the broker acted, knew that the values given by him were incorrect. On this record, it cannot be said that the petitioners have produced satisfactory evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without intention to defraud the revenue, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

Accordingly, the petitions are denied, and judgment will be rendered for the respondent.